■ In the Matter of the Estate of JOSEPH F. QUANDT JR., Deceased. MARY A. QUANDT, Respondent; THOMAS J. QUANDT et al., as Coexecutors of JOSEPH F. QUANDT JR., Deceased, Appellants. ANNE M. DE VALL, Respondent.—Mercure, J. Appeal from that part of a decree of the Surrogate's Court of Montgomery County (Mycek, S.), entered October 23, 1990, which directed respondents to make available for examination certain books, records and assets of Quandt Wholesale Distributors, Inc.

Joseph F. Quandt Jr. (hereinafter decedent) died a resident of Montgomery County on March 28, 1990. Decedent and petitioner, who was his wife, had been involved in a contested divorce proceeding since 1987, and discovery was incomplete at the time of decedent's death. Respondents, who were dece-

dent's brothers, were the coexecutors and testamentary trustees designated in decedent's last will, executed on March 13, 1986. They petitioned Surrogate's Court for probate of the will and were issued preliminary letters testamentary. At the time of his death, decedent was the owner of 251 of 650 outstanding shares of the capital stock of Quandt Wholesale Distributors, Inc. (hereinafter the corporation), a family-owned business. The shares were subject to an August 21, 1986 "stock retirement agreement" which provided for the corporation's valuation and purchase of the stock of dying shareholders. Respondents are also shareholders of the corporation, owning a total of 303 shares. Challenging the $3,150 per share value placed upon decedent's stock by a January 1990 amendment to the stock retirement agreement, petitioner brought this proceeding in Surrogate's Court, as is relevant to this appeal, pursuant to SCPA 1412 (4) to compel respondents to make available for examination and copying (1) the corporation's original books and records, accountants' work papers, financial statements and tax returns for the preceding five years, (2) an appraisal of all of the corporation's buildings and improvements, vehicles, machinery and equipment, and (3) copies of any and all buy/sell agreements and the work papers showing the calculation of the purchase prices used in the agreements. Surrogate's Court granted petitioner's request for discovery of all designated material generated up to the time of decedent's death. Respondents appeal.

Initially, we reject the contention that Surrogate's Court lacked authority to compel discovery of records of the corporation, a nonparty. While it is true that neither SCPA 1412 (4) nor 2102 (1) expressly authorizes examination of material of a person or entity other than the decedent or the estate, the courts have permitted broad discovery of all material within the possession or control of a fiduciary as an aid to valuation of estate assets (see, Matter of Du Bray, 132 AD2d 914, 915; Matter of Perkins, 279 App Div 1084; Matter of Mendelson, 28 Misc 2d 661, 662; Matter of Tannenbaum, 9 Misc 2d 95, 97). Here, respondents, in their individual and fiduciary capacities, control approximately 85% of the shares of the corporation and are obviously capable of producing its records (see, Matter of Du Bray, supra).

We also reject the contention that, in view of the binding stock purchase agreement, no purpose may be served by the discovery. A number of factors point to both motive and opportunity to manipulate the value of decedent's stock in the corporation so as to reduce petitioner's elective share of the

estate *(see, Matter of Du Bray, supra; see also, Matter of Bernstein,* 169 AD2d 719; *Matter of Granowitz,* 150 AD2d 446), the most notable being the pendency of the divorce action between petitioner and decedent and the fact that the remaining shareholders of the corporation were close relatives of decedent. We also note that the original stock retirement agreement, submitted as an exhibit to the affidavit of respondent Thomas J. Quandt, did not state the value of the corporation, as provided in paragraph 4.1 thereof. Rather, the spaces furnished for the total and per-share values were left blank. Similarly, the annual valuations, required in paragraph 4.2 of the agreement to be made at the close of each fiscal year, were apparently never performed and no value was placed upon the corporation until January 1990, when decedent's terminal condition was well advanced and his death near. Under the circumstances, Surrogate's Court did not abuse its discretion in permitting some discovery of the corporation's books and records *(see, Matter of Bernstein, supra; Matter of Granowitz, supra).*

However, the existence of factors heightening the likelihood that decedent's stock was undervalued does not justify discovery as broad as that permitted here. In the absence of actual evidence of undervaluation, Surrogate's Court should have limited discovery to readily available materials which are most likely to lend support to petitioner's claim. In our view, it is sufficient that initial disclosure be had of (1) all corporate balance sheets, profit and loss statements and income tax returns for the five years immediately preceding decedent's death, and (2) all buy/sell agreements and the work papers showing the calculation of the purchase prices used in the agreements *(see, Raved v Raved,* 71 AD2d 883, 884). Should that disclosure uncover materials which further support petitioner's claim, petitioner may seek such additional discovery as Surrogate's Court deems material and necessary in view of the evidence then in existence.

Casey, J. P., Yesawich Jr., Crew III and Harvey, JJ., concur. Ordered that the decree is modified, on the law, without costs, by reversing so much thereof as ordered discovery of all of the original books and records of Quandt Wholesale Distributors, Inc., its accountants' work papers and financial statements for a period of five years and an appraisal of all of its buildings and improvements, vehicles, machinery and equipment; petitioner's application granted to the extent of ordering disclosure of all corporate balance sheets, profit and loss statements and income tax returns for the five years immediately preced-

ing decedent's death and all buy/sell agreements and the work papers showing the calculation of the purchase prices used in the agreements, and, as so modified, affirmed.